United States District Court
Southern District of Texas
FILED

**MAR 2 2 2016**

. Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| PABLO LUCIO VASQUEZ | § | |
| Petitioner | § | |
| | § | |
| vs. | § | Civil Action No. M-16-115 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division | § | |
| Respondent | § | |

## REPORT AND RECOMMENDATION

The Court previously denied Petitioner Pablo Lucio Vasquez' petition for a writ of habeas corpus.   He is scheduled for execution on April 6, 2016.   On March 16, 2016, Vasquez filed a petition for a writ of habeas corpus and a motion to stay his execution.   For the following reasons, it is recommended that the petition and motion be denied.

Background

Vasquez was convicted of the murder of 12 year old David Cardenas during the course of robbing him.   On the night of the murder, David's sister, Hilda Cantu, dropped David off near a friend's house.   He did not return home.   75 Tr. at 8-25.[1]   David and Andres Rafael Chapa, the friend David visited the night of the murder, attended a party where they were seen rolling marijuana cigarettes.   Vasquez also attended the party.   76 Tr. at 30-48.   Police received an anonymous tip about the murder, and eventually detained Chapa.   Chapa led them to David's body.   Police also received a phone call from Vasquez' cousin, Maggie Salinas, implicating Vasquez and informing police of Vasquez' whereabouts.   75 Tr. at 55-76 Tr. at 27.   Hilda

---

[1]      "Tr." refers to the transcript of Vasquez' trial.

1

Cantu, Cardenas' older sister, testified that David was wearing a gold ring and a gold chain when she saw him shortly before the murder.   84 Tr. at 5.

Vasquez made a statement to the police in which he admitted that he hit Cardenas in the head with a pipe and cut his throat.   An autopsy concluded that the cause of death was a major fracture in the back of Cardenas' skull caused by blunt force.   The body was also mutilated after death by some means that caused bones to shatter.   Vasquez and his accomplice then dragged Cardenas' body to a field for burial.   Fearing that Cardenas was still alive, one of the perpetrators hit Cardenas in the face with a shovel.   At some point before burying the body, Vasquez took a ring and a necklace from the body.   One of Vasquez' cousins testified that Vasquez told her that he killed Cardenas because Cardenas did not "give [Vasquez] what he wanted." *Vasquez v. State*, No. 73,456, slip op. at 25; 84 Tr. at 51; 88 Tr. at 69-78, 103-04. When police found Cardenas' body, he was missing an arm, part of the other arm, had no skin on his back, and had a hole in the back of his head.   84 Tr. at 31.   Vasquez presented no witnesses during the guilt-innocence phase of his trial.   The jury found him guilty of capital murder for murdering Cardenas while robbing or attempting to rob him.

During the penalty phase, the State presented evidence that Vasquez threatened to shoot others, stabbed a man during a fight, and threw a brick at another man.   A corrections officer testified that he witnessed Vasquez fight with another inmate at the Hidalgo County jail. *Id.* at 33-38.   A police officer testified to Vasquez' involvement in a burglary in 1995.   91 Tr. at 30-44; 92 Tr. at 13-71.

Dr. Diego Rodriguez Escobar, a psychiatrist, testified for Vasquez.   Based on his evaluation of Vasquez, Dr. Rodriguez-Escobar concluded that Vasquez has low-normal intelligence and verbal skills.   He opined that Vasquez has antisocial personality disorder,

suicidal ideation, and attention deficit hyperactivity disorder with adjustment disorder.   He also has a history of substance abuse.   His substance abuse caused Vasquez to slip into paranoid states and adversely affected his cognitive functioning.   Dr. Rodriguez-Escobar opined that the adjustment disorder would subside over time as Vasquez adapted to incarceration.   On cross examination, Dr. Rodriguez-Escobar described people with antisocial personality disorder as "psychopathic" and predatory.   He admitted that many serial killers and mass murdered are antisocial.   93 Tr. at 100-34.

Dr. Jonathan R. Sorensen, a professor of criminal justice, also testified for Vasquez.   Dr. Sorensen researched and published on the incidence of violence among prison inmates serving sentences for capital offenses.   His research concluded that capital offenders are among the best behaved inmates and parolees.   The number of convicted capital offenders in Dr. Sorensen's studies who committed another homicide was about one percent.   He also found that the likelihood of violence correlates to age: older inmates are less likely to engage in violence than younger ones.   Incidence of violence also declines with the length of time an inmate has served in prison.   Based on Vasquez' age and other relevant characteristics, Dr. Sorensen estimated that he presented approximately a 1.25 percent likelihood of committing another homicide, and 12.5 percent likelihood of committing a future assault.   94 Tr. at 4-36.

The jury found that there is a probability that Vasquez would commit future acts of criminal violence that would constitute a continuing threat to society, and that the mitigating evidence was not sufficient to justify imposing a life sentence.   95 Tr. at 3-4.   Accordingly, the trial court imposed a sentence of death.   97 Tr. at 3.

The Texas Court of Criminal Appeals ("CCA") affirmed Vasquez' conviction and sentence and denied his original state application for habeas corpus.   *Ex Parte Vasquez*, No.

3

50,801-01 (Tex.Crim.App. May 29, 2002) (*per curiam*).   Vasquez filed a successive state petition.   The Court of Criminal Appeals dismissed as an abuse of the writ all but Vasquez' claims that he is mentally retarded.   *Ex Parte Vasquez*, No. 50,801-02 (Tex.Crim.App. March 10, 2004).   On April 30, 2004, Vasquez filed his federal petition for a writ of habeas corpus, and moved for summary judgment.

On referral from the District Judge, I entered two Reports and Recommendations recommending that the petition be denied.   On March 31, 2014, the District Judge adopted my Reports and Recommendations and dismissed Vasquez' petition.   The Fifth Circuit affirmed, *Vasquez v. Stephens*, 597 Fed. App'x 775 (5th Cir. 2015), and the Supreme Court denied Vasquez' petition for a writ of *certiorari*, *Vasquez v. Stephens*, 135 S.Ct. 36 (2015).

Discussion

Vasquez' petition raises a single claim for relief.   Vasquez contends that he is mentally ill.   He argues that the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the Eighth Amendment bars the execution of mentally retarded offenders, should be extended to bar the execution of competent but mentally ill offenders.

A.    Procedural Default

Vasquez first raised this claim in his second state habeas corpus application. He also raised it in his original federal petition.

I originally understood Vasquez' claim as a claim that he is incompetent to be executed. I therefore recommended dismissing the claim without prejudice as premature.   *See Vasquez v. Dretke*, No. 4:04cv143, December 5, 2005 Report and Recommendation (Docket Entry 39) at 15-16, 18.   Vasquez' current petition, however, makes clear that he does not claim that he is incompetent to be executed.

4

A prisoner is incompetent to be executed when his "mental illness prevents him from comprehending the reasons for the penalty or its implications." *Ford v. Wainwright*, 477 U.S. 399, 417 (1986). To be competent, a prisoner must be able to understand "the fact of his impending execution and the factual predicate for the execution." *Panetti, v. Quarterman,* 551 U.S. 930, 954-55 (2007) (internal quotation marks and citations omitted). Vasquez' petition states: "Vasquez is competent to be executed, and is not arguing to the contrary. He understands he is scheduled for execution, and he knows why. However, he is mentally ill – seriously mentally ill." Petition at 7. Because Vasquez does not claim to be incompetent, this Court's prior dismissal of the claim as premature was in error. The claim should have been dismissed with prejudice as procedurally barred.

The Texas Court of Criminal Appeals dismissed Vasquez' second state application, which included the instant claim, as an abuse of the writ. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997)

(citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").   The state procedural bar precludes this Court from reviewing Petitioner's claim absent a showing of cause for the default and actual prejudice attributable to the default, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

"Cause" for a procedural default requires a showing that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule, or a showing of a prior determination of ineffective assistance of counsel.   *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 222 (1988).     Vasquez makes no showing of cause.

A "miscarriage of justice" means actual innocence, either of the crime for which Vasquez was convicted or of the death penalty.   *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992). "Actual innocence of the death penalty" means that, but for a constitutional error, he would not have been legally eligible for a sentence of death.   *Id.*

To show actual innocence,

> [T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986).   More succinctly, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the evidence now presented.   *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

6

Vasquez does not claim that he is actually innocent of the crime.   He makes a tangential argument that he is actually innocent of the death penalty because, he submits, the Eighth Amendment bars his execution under his proposed extension of *Atkins*.   For the reasons discussed below, however, his *Atkins* claim is without merit.   Vasquez therefore fails to demonstrate either cause for his default or actual innocence, and his claim is procedurally defaulted.

B.    *Atkins*

As noted above, *Atkins*, by its own terms, pertains to people suffering from mental retardation, not mental illness.   While there is substantial case law holding that a person who is incompetent to be executed may not be executed, Vasquez points to no case law holding that a person who is competent may not be executed because he is mentally ill.   The Fifth Circuit has repeatedly held that the Eighth Amendment does not bar the execution of a mentally ill but competent inmate, *see Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014), and has specifically held that *Atkins* is not applicable to such individuals, *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006).   Therefore, under controlling precedent, Vasquez' claim is without merit.

C.    Non-Retroactivity

In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court held that, except in very limited circumstances, a federal habeas court cannot retroactively apply a new rule of criminal procedure. The Court explained that a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.   To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.   *Id.* at 301 (emphasis in original).   The federal habeas corpus statute effectively codified the *Teague* non-retroactivity rule "such that federal habeas

7

courts must deny relief that is contingent upon a rule of law not clearly established at the time the conviction becomes final." *Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 380-81 (2000)), *cert. denied*, 537 U.S. 1118 (2003).

As noted above, Vasquez fails to identify a single case extending *Atkins* to bar the execution of mentally ill inmates. He thus asks this Court to create and apply a new rule of criminal procedure. Under *Teague*, this Court may not do so.

D.    Motion to Stay Execution

In reviewing an application for a stay of execution, this Court must consider (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would harm the public interest. *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982), *cert. denied*, 465 U.S. 1013 (1984); *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982). Although the movant in a capital case need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities, *i.e.*, the other three factors, weighs heavily in favor of granting the stay. *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.), *cert. denied*, 483 U.S. 1036 (1987); *O'Bryan v. McKaskle*, 729 F.2d at 993; *Ruiz*, 666 F.2d at 856. In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor. *O'Bryan v. Estelle*, 691 F.2d at 708. The irreversible nature of the death penalty, however, must be weighed against the fact that there must come a time when the legal issues in the case have been sufficiently litigated so that the law must be allowed to run its course. *Id.*

Vasquez has not raised a meritorious claim for relief. Because he has neither

8

demonstrated a likelihood of success on the merits of his claim nor presented a substantial case on the merits, he is not entitled to a stay of execution.

Certificate of Appealability

A petitioner may obtain a certificate of appealability ("COA") either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997). A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it

> debatable whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it debatable
> whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)."   *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court concludes that Vasquez has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and that jurists of reason would not find the Court's assessment of his claim debatable.   This Court concludes that Vasquez is not entitled to a certificate of appealability

**RECOMMENDATION**

For the foregoing reasons, it is recommended that:

1.   Vasquez' Petition for a Writ of Habeas Corpus (Doc. # 1) should be denied and dismissed with prejudice;

2.   Vasquez' Motion for a Stay of Execution (Doc. # 3) should be denied; and

3.   No certificate of appealability should issue.

## **NOTICE TO PARTIES**

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within five (5) days after being served with a copy[2] shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See* 28 U.S.C. § 636(b)(1);  *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012).

McAllen, Texas
March 22, 2016

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE

---

[2]        While the statute provides for a 14 day objection period, that is a maximum, not a minimum.  "The court may require a response within a shorter period if exigencies of the calendar require . . . ."  *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978).   Vasquez is scheduled for execution on April 6.   Therefore, the exigencies of the calendar require a shortened time for objections.